**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

MICHAEL SHULER,
230 11th Street, N.E.,
Washington, D.C. 20002

Plaintiff,

v. Civil Action Number:

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY and
PAUL J. WIEDEFELD, acting in his official capacity,
600 Fifth Street, N.W.
Washington, D.C. 20001

Defendants.

## COMPLAINT

AND NOW comes the plaintiff, Michael Shuler, by and through his attorneys, and files the following this Complaint under the Americans with Disabilities Act and the Rehabilitation Act against Washington Metropolitan Area Transit Authority and Paul J. Wiedefeld (hereinafter referred to as "WMATA" and Wiedefeld or "Defendants") and states as follows:

### Nature of the Action

1. This is an action under the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq., as amended ("Rehab Act"), seeking declaratory, injunctive and monetary relief from Defendant WMATA, and an action under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. as amended ("ADAAA") seeking declaratory and injunctive relief against Defendant Wiedefeld, all for denial of employment on the basis of disability: i.e., Mr. Schuler having an actual disability, being regarded as having a disability and/or having a record of disability, and retaliation.

2. Defendants maintain policies, practices and customs of unjustifiably disqualifying and refusing to transfer employees with certain medical conditions, including diabetes, hypertension and sleep apnea, based upon: improper medical inquiries; misuse of medical diagnostic and treatment measures, including blood testing; and requiring a Commercial Drivers License (CDL), and thus satisfaction of CDL-related medical criteria, for jobs, including "Structural Repairer B," that do not require commercial driving. The purpose and effect of these policies, practices and customs to unlawfully exclude qualified individuals such as Mr. Shuler from gainful employment on the basis of disability in violation of the Rehab Act and the ADA.

**Jurisdiction and Venue**

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant the Rehab Act and the ADA. Plaintiff brings his claims directly under the Rehab Act against WMATA as that statute does not require exhaustion of any administrative remedies. Plaintiff brings his claims under the ADA, after having satisfied administrative exhaustion requirements as evidenced by the issuance of a right to sue dated March 7, 2017 by the U.S. Equal Opportunity Commission ("EEOC"). This lawsuit is filed within 90 days of the Plaintiff's receipt of the right to sue from the EEOC, as required by the ADA.

**Parties**

4. Plaintiff Michael Shuler is an adult individual residing in Washington, DC.

5. At all relevant times, Mr. Shuler was a qualified individual with a disability who possessed the qualifications to perform the essential functions of his job and other positions, with or without an accommodation.

6. Plaintiff Shuler is substantially limited in major life activities, including the functions of his endocrine, respiratory and circulatory systems.

7. Mr. Shuler also has been subjected to actions prohibited by the Rehab Act and the ADA because of actual and perceived impairments which are neither transitory nor minor, including of his endocrine, respiratory and circulatory systems. *See, e.g.*, 42 U.S.C. § 12102.

8. Defendant WMATA is an employer within the meaning of the Rehab Act because, among other things, WMATA receives federal financial assistance through funding and/or contracts.

9. Defendant Wiedefeld, who is sued in his official capacity as Chief Executive Officer of WMATA, is a covered employer within the meaning of the ADA, pursuant to the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), as reaffirmed in *Bd. of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374 n.9 (2001), because, among other things, Wiedefeld, in his official capacity as CEO of WMATA, has employed the requisite number of employees during all relevant time periods. In addition, WMATA, of whom Wiedefeld is CEO is a "person engaged in an industry affecting commerce." 42 U.S.C. § 12111(5).

**Allegations of Unlawful Discrimination**

10. Michael Shuler hired on with WMATA on June 5, 2000 as a laborer and last worked as a Structural Repairer B (also known as "Structure Rep.B – TRST") until his wrongful medical disqualification by WMATA in 2014. The primary duties of a structural repairer are to perform preventive, scheduled, unscheduled or corrective maintenance and repair to bridges, tunnels and other WMATA structures.

11. Although the Structural Repair B position does not actually require a Commercial Driver's License (CDL) as performed, MATA's job description has stated this as a requirement: "may operate Authority vehicles between work locations" and "Valid Commercial Driver's

License (CDL) from jurisdiction of residence is required. Must be able to obtain a CDL within 60 days after being promoted to the "C" level and above".

12. Although Mr. Shuler was determined to be qualified by a medical examiner following a physical examination as part of a DOT recertification, Mr. Shuler received a letter dated November 5, 2014 from Dr. Gina Pervall, Director of WMATA Medical Services, stating that "[d]ue to your medical condition- uncontrolled diabetes mellitus, uncontrolled sleep apnea and hypertension- effective November 4, 2014 you have been medically disqualified from the position of Structure Rep B- TRST and have been approved and referred to the office of Human Resource Operations for Section 124 alternate job placement".

13. WMATA's policies, practices and customs required Mr. Shuler's to have: a "Hemoglobin A1C" (a common diabetes status test of average blood sugar level over the past few months) test result under 9.5%; a record of his compliance level using a "CPAP" machine ("continuous positive airway pressure", a treatment for sleep apnea) demonstrating at least 70% usage for a minimum of 4 hours per night for treatment of sleep apnea; and blood pressure test results in the range of 140/90. Each of these standards is based on WMATA's interpretation of what is required to maintain a CDL and otherwise deprived Mr. Shuler of an individualized assessment as required under the ADA and Rehab Act. In the case of the A1C requirement, WMATA's interpretation is woefully incorrect and inconsistent with sound medical science and clinical treatment standards.

14. Mr. Shuler disagreed with this disqualification and he did not have any symptoms related to the above conditions that impaired his ability to safely perform the job.

15. Nonetheless, Mr. Shuler requested on November 15, 2014 that WMATA transfer him to a Structural Repair D position which he previously performed and by WMATA's own job description does not require a CDL.

16. After Mr. Shuler filed his charge with the Equal Employment Opportunity Commission on April 20, 2015, WMATA directed Mr. Shuler to attend an ADA Panel on December 5, 2015. Mr. Shuler explained that he did not need an accommodation to return to work as a Structural Repairer D.

17. Following Mr. Shuler's attendance at the ADA Panel and Mr. Shuler's submission of updated medical records, Dr. Pervall wrote a letter dated January 14, 2016 denying returning Mr. Shuler to work and requiring him to provide evidence of "control" of his diabetes, hypertension and sleep apnea for eighteen (18) months.

18. Dr. Pervall, WMATA's Medical Director, based her medical disqualification upon her speculation that it would be unsafe for him "if he were to have an event."

19. Dr. Prevall's decision to require "control" for eighteen months was unnecessary, unprecedented, and not based on any known WMATA policy or practice applied to any other WMATA employees.

20. In a letter dated September 20, 2016, Dr. Pervall reviewed medical data submitted by Mr. Shuler. The data was current as of May 27, 2016. It showed a blood pressure reading of 140/80, CPAP compliance of 83%, and an A1C of 6.8, all of which are measurements in compliance with WMATA's written policies. Nevertheless, Dr. Pervall again denied Mr. Schuler employment for 18 months stating that Mr. Shuler should continue to forward monthly results of blood pressure, A1C and CPAP to Medical Services.

21. On September 28, 2016, Mr. Shuler submitted to WMATA in writing a written, notarized request for any and all employment and medical records to WMATA to review documents relied upon for his continued medical disqualification despite his excellent medical status reports. WMATA never responded and failed to produce any documents.

22. In a letter dated February 16, 2017, Mr. Shuler's physician certified that his blood pressure was 121/81 and his A1C was 6.7%, i.e. in compliance with WMATA's written policies.

23. On April 15, 2017, Mr. Shuler received a renewal of his medical certification for driving duties issued by the District of Columbia under applicable FMCSA regulations. He additionally was approved by the Federal Motor Safety Carrier Act (FMSCA ), a federal agency, for commercial driving effective November 3, 2015 through November 3, 2017.Although Mr. Shuler remains qualified to perform the duties of the Structural Repair B and D positions, WMATA continues to medical disqualify Mr. Shuler based upon its perception of his medical history, illegal medical inquiries, requirement of a CDL for non-commercial driving positions, failure to accommodate and in retaliation for filing a charge of discrimination with the EEOC.

**COUNT I**

**Medical Disqualification: Defendant WMATA's Violation of Rehabilitation Act**

24. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

25. Mr. Shuler was at all relevant times capable of performing the essential functions of a Structural Repair B, Structural Repair D and other positions with or without accommodations.

26. Defendant WMATA failed and refused to allow Mr. Shuler to return to work for an indefinite period of time and then for a period of eighteen months of compliance, to be determined by Dr. Pervall, because Mr. Shuler was disabled, regarded as disabled and/or because he had a

record of disability, without regard to his ability to perform the essential functions of the jobs he sought, all within the meaning of the Rehabilitation Act.

27. As a result of this conduct, WMATA has caused Mr. Shuler the loss of wages and other job benefits and emotional and other harm including punitive damages. In addition, Defendant WMATA has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

## COUNT II

### Medical Disqualification: Defendant Weidefeld's Violation of the Americans with Disabilities Act

28. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

29. Mr. Shuler was at all relevant times capable of performing the essential functions of a Structural Repair B, Structural Repair D and other positions with or without accommodations.

30. Defendant Wiedefeld, though his agents, failed and refused to allow Mr. Shuler to return to work for an indefinite period of time subject to his demonstrating a period of compliance, to be determined by Dr. Pervall, because Mr. Shuler was disabled, regarded as disabled and/or because he had a record of disability, without regard to his ability to perform the essential functions of the jobs he sought, all within the meaning of the Americans with Disabilities Act.

31. As a result of this conduct, Wiedefeld has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

## COUNT III

### Denial of Reasonable Accommodations: Defendant WMATA's Violation of the Rehabilitation Act

32. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

33. Mr. Shuler was at all relevant times capable of performing the essential functions of a Structural Repair B, Structural Repair D and other positions with accommodations.

34. To the extent that Defendant WMATA maintains that a Commercial Drivers License (CDL) was a required certification and further, that commercial driving was an essential job function for the Structural Repairer B position, Defendant failed to provide Mr. Shuler reasonable accommodations such as job modification or reassignment when requested.

35. As a result of this conduct, WMATA has caused Mr. Shuler the loss of wages and other job benefits and emotional and other harm and punitive damages. In addition, Defendant WMATA has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

## COUNT IV

### Denial of Reasonable Accommodations: Defendant Wiedefeld's Violation of the Americans with Disabilities Act

36. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

37. Mr. Shuler was at all relevant times capable of performing the essential functions of a Structural Repair B, Structural Repair D and other positions with accommodations.

38. To the extent that Defendant Wiedefeld maintains that a Commercial Drivers License (CDL) was a required certification and further, that commercial driving was an essential

job function for the Structural Repairer B position, Defendant failed to provide Mr. Shuler reasonable accommodations such as job modification or reassignment when requested.

39.

40. As a result of this conduct, Weidefeld has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

**COUNT V**

**Retaliation: Defendant WMATA's Violation of the Rehabilitation Act**

41. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

42. Mr. Shuler engaged in protected activity by filing a charge of discrimination with the Equal Employment Opportunity Commission on or about April 20, 2015.

43. As a result of this charge of discrimination and the EEOC's investigation, WMATA refused to return Mr. Shuler, admittedly failed to engage in the interactive process and retaliated against him by requiring "evidence of compliance over 18 consecutive months prior to consideration for reinstatement".

44. As a result of this conduct, WMATA has caused Mr. Shuler the loss of wages and other job benefits and emotional and other harm. In addition, WMATA has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

**COUNT VI**

**Retaliation: Defendant Wiedefeld's Violation of the Americans with Disabilities Act**

45. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

46. Mr. Shuler engaged in protected activity by filing a charge of discrimination with the Equal Employment Opportunity Commission on or about April 20, 2015.

47. As a result of this charge of discrimination and the EEOC's investigation, Defendant Wiedefeld, through his agents, refused to return Mr. Shuler, admittedly failed to engage in the interactive process and retaliated against him by requiring "evidence of compliance over 18 consecutive months prior to consideration for reinstatement".

48. As a result of this conduct, Wiedefeld has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

**COUNT VII**

**Defendant WMATA's Violation of the Rehabilitation Act: Unlawful Medical Inquiries**

49. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

50. Ms. Shuler was required by Defendant WMATA to submit any and all medical records for consideration of reinstatement following his medical disqualification and attendance at the ADA Panel.

51. Defendant's HbA1c test was a medical inquiry under the Rehab Act.

52. Defendant's HbA1c test was not job-related and consistent with business necessity.

53. Defendant's HbA1c test did not relate to Mr. Shuler's individual performance or risks associated with his diabetes.

54. Defendant's use of the HbA1c test as an employment standard did not relate to

Mr. Shuler's individual performance or risks associated with his diabetes because it was not utilized in conjunction with any individualized assessment.

55. Because Defendant's use HbA1c test as an employment standard did not relate to Mr. Shuler's individual performance or risks associated with his diabetes, it was not job-related or consistent with business necessity.

56. Defendant WMATA's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Americans with Disabilities Act and its implementing regulations, which are incorporated by reference in the Rehabilitation Act in the following ways:

(a) by requiring plaintiff to submit to disability-related inquiries that are not job-related and consistent with business necessity and are unrelated to the ability to perform their job-related functions, 42 U.S.C. Section 12112(d)(2) and 29 C.F.R. Section 1630.13;

(b) by requiring plaintiff to disclose overbroad medical history and/or medical records (including information wholly unrelated to the medical issues for which Defendant was purportedly evaluating the fitness for duty), 42 U.S.C. Section 12112(d)(3) and 29 C.F.R. Section 1630.14(b).

57. As a result of this conduct, Defendant WMATA has violated the Rehabilitation Act and caused Mr. Shuler the loss of wages and other job benefits and emotional and other harm. In addition, WMATA has caused Mr. Shuler to be subjected to unlawful conditions of employment, including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

**COUNT VIII**

**Defendant Wiedefeld's Violation of the Americans with Disabilities Act: Unlawful Medical Inquiries under Section 12112(d)**

58. Mr. Shuler incorporates by reference all of the above allegations set forth in this Complaint.

59. Ms. Shuler was required by Defendant Wiedefeld, through his agents, to submit any and all medical records for consideration of reinstatement following his medical disqualification and attendance at the ADA Panel.

60. Defendant's HbA1c test was a medical inquiry under the ADA.

61. Defendant's HbA1c test was not job-related and consistent with business necessity.

62. Defendant's HbA1c test did not relate to Mr. Shuler's individual performance or risks associated with his diabetes.

63. Defendant's use of the HbA1c test as an employment standard did not relate to Mr. Shuler's individual performance or risks associated with his diabetes because it was not utilized in conjunction with any individualized assessment.

64. Because Defendant's use HbA1c test as an employment standard did not relate to Mr. Shuler's individual performance or risks associated with his diabetes, it was not job-related or consistent with business necessity.

65. Defendant Wiedefeld's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Americans with Disabilities Act and its implementing regulations in the following ways:

(a) by requiring plaintiff to submit to disability-related inquiries that are not job-related and consistent with business necessity and are unrelated to the ability to perform their job-related functions, 42 U.S.C. Section 12112(d)(2) and 29 C.F.R. Section 1630.13;

(b) by requiring plaintiff to disclose overbroad medical history and/or medical records (including information wholly unrelated to the medical issues for which Defendant was purportedly evaluating the fitness for duty), 42 U.S.C. Section 12112(d)(3) and 29 C.F.R. Section 1630.14(b);

66. As a result of this conduct, Defendant Weidefeld has violated the Americans with Disabilities Act and caused Mr. Shuler to be subjected to unlawful conditions of employment,

including unlawful policies, practices and customs, requiring prospective injunctive relief to be corrected.

**PRAYER FOR RELIEF (All Counts)**

WHEREFORE, Mr. Shuler demands: (1) judgment against Defendant WMATA in an amount to make him whole for all damages suffered by him as a result of defendant's violations of the Rehabilitation Act, including, but not limited to, damages for back pay and benefits, front pay, compensatory damages, and all other damages recoverable under the above laws plus prejudgment and other interest; (2) that this Court enjoin Defendants WMATA and Wiedefeld from further violating the above laws; (3) that this Court order Defendants WMATA and Wiedefeld to reinstate Mr. Shuler to the position he held when Defendants themselves, and through their and their agents and employees, unlawfully medically disqualified Mr. Shuler, with all seniority and benefits he would have otherwise accrued had not Defendants violated the above laws; (4) that this Court award Mr. Shuler expert witness fees, attorneys' fees and the cost of bringing this action and, (5) that this Court grant Mr. Shuler all other declaratory, injunctive and monetary relief that he is entitled to under law and equity.

**A JURY TRIAL IS DEMANDED.**

Dated: June 5, 2017

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark (420480)
Jeremy Greenberg (1024226)
Clark Law Group, PLLC
1250 Connecticut Ave, N.W., Suite 200
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com
jgreenberg@benefitcounsel.com
*Attorneys for Plaintiff*

Morgan and Paul, PLLC

/s/ Gregory G. Paul
GREGORY G. PAUL
Applicant for *Pro Hac Vice*
Attorney for Plaintiff
PA ID No.: 83334
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
412-259-8375
888-822-9421 (fax)
gregpaul@morgan-paul.com